**\*E-FILED ON 02/13/2007\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT SCHMIDT and THOMAS WALSH, | No. C04-01026 RMW (HRL) |
| Plaintiffs,<br>v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| LEVI STRAUSS & CO., LAURA LIANG and DOES 1-50, | |
| Defendants. | [Re: Docket No. 90] |
| RELATED COUNTER-ACTION | |

This is an action brought under the Sarbanes-Oxley Act, 18 U.S.C. § 1541A. Plaintiffs Robert Schmidt and Thomas Walsh are former employees of defendant Levi Strauss & Co. ("LS&Co.") who worked under the supervision of defendant Laura Liang. They claim that they were wrongfully terminated in retaliation for filing complaints about defendants' alleged tax fraud and other accounting irregularities. They also allege that defendants defamed them. Defendants contend that plaintiffs were fired for insubordination and work performance issues.

Before filing the instant action, plaintiffs filed a similar wrongful termination lawsuit in San Francisco Superior Court, alleging violations of state common law and statutes. The parties exchanged some discovery there. Later, they stipulated to stay the state court case while they litigate the defamation and Sarbanes-Oxley claims here.

On January 30, 2007, this court heard the "Motion to Compel Production of Documents and Further Production of Documents" filed by plaintiffs. LS&Co. opposed the motion; and, at this court's direction, LS&Co. subsequently submitted certain documents for an *in camera* review. Upon consideration of the papers filed by the parties, as well as the arguments of counsel, this court grants the motion in part and denies the motion in part.

### 1. Moot Issues

The parties reached agreement as to (a) draft written improvement notices and termination notices and (b) business plan and presentation documents. Accordingly, plaintiffs' motion to compel these documents is DENIED as MOOT.

### 2. Defendant Laura Liang's Personnel File

LS&Co. has produced documents from defendant Laura Liang's personnel file. However, plaintiffs assert that the production is "spotty" and that several categories of documents are missing from the production, including: Liang's self-assessments; documents concerning her 2001 promotion from Director to Vice President; documents concerning her work, duties and awards for 1999; the second page of a two-page performance evaluation in 2003 by LS&Co.'s former Chief Financial Officer, Bill Chiasson; and other records which LS&Co.'s documents indicate are created in the normal course of employment with the company. Plaintiffs assert that LS&Co. should have Liang's complete personnel file because it is legally required to maintain it. Further, they express concern that LS&Co.'s search for Liang's personnel documents was haphazard and less than thorough because the document production was made in piecemeal fashion over four different points in time.

LS&Co.'s counsel avers that LS&Co. has produced all of Liang's personnel documents that LS&Co. has been able to locate after a diligent search. (See Schwing Decl., ¶ 3). At oral argument, defense counsel stated that LS&Co.'s legal department conducted the document search in consultation with the human resources department and, possibly, Liang herself. As for the performance review by Chiasson, defense counsel asserted that Chiasson's deposition testimony indicates that there was no second page because he did not prepare the document in a normal review situation (i.e., the review in question reportedly was provided by Chiasson two

1  weeks after his employment at LS&Co. was terminated).  Further, defense counsel confirmed
2  that defendants are not "hiding" documents.

3  Based on defense counsel's representations to the court, it appears that there are no
4  further documents to compel.  Nonetheless, this court will grant plaintiffs' motion to the
5  following extent: **No later than February 23, 2007**, defendants shall serve declaration(s) from
6  appropriate person(s) within LS&Co. (i.e., not defense counsel) which (a) detail the search
7  (what, where and who) that was conducted for Liang's personnel file; (b) confirm that
8  defendants have searched for Liang's personnel documents in all locations where they might
9  reasonably be found; and (c) confirm that all responsive documents which were located have
10 been produced and that no documents have been withheld.

### 3. Minutes of Tax Leadership Team Meetings

12 During their employment at LS&Co., plaintiffs were members of the tax leadership
13 team, which met on a monthly basis.  Plaintiffs assert that although LS&Co. produced the
14 "rough" minutes from those meetings, it refuses to produce the "final" version of those minutes.
15 The parties vigorously dispute whether the "final" version of the minutes fall within (a) their
16 prior stipulation as to the use of discovery from their state court action; or (b) their agreement to
17 conduct limited additional written discovery through February 15, 2007 (notwithstanding that
18 discovery closed in this case on September 15, 2006).  In any event, LS&Co. maintains that
19 plaintiffs have drawn an inappropriate distinction between "rough" and "final" minutes.  At the
20 motion hearing, defense counsel asserted that minutes were kept sporadically and that there may
21 be one or two instances where changes may have been made to an initial version.  However,
22 LS&Co. says that it has not withheld any version(s) of minutes which have been produced in
23 this action.

24 There is no dispute that, in their state court lawsuit, plaintiffs served a formal request
25 calling for the tax leadership meeting minutes.  (See Ainley Decl., Ex. D (Request No. 494: "All
26 LS&Co. Tax Department Leadership Team Meeting Minutes for all meetings during and after
27 fiscal year 1999 to the present.")).  However, plaintiffs have not pointed to any discovery
28 request propounded in the instant action which calls for the production of the tax leadership

3

1  meeting minutes themselves; and, LS&Co. says that the minutes which have been produced
2  here were produced because they are responsive to plaintiffs' requests for other categories of
3  documents.

4  Plaintiffs nevertheless argue that the parties agreed that all discovery *propounded* in the
5  state court action could be used in the instant lawsuit.  LS&Co. contends that the parties agreed
6  only that those documents which had been produced and depositions which had been taken in
7  the state court lawsuit could be used here.  Further, it says that (1) there was no agreement that
8  defendants would be obliged to respond here to all of plaintiffs' requests served in the state
9  court action; and (2) plaintiffs' counsel indicated that he did not want defendants to respond to
10 the discovery requests which had been propounded in the state court lawsuit.  The record
11 presented indeed appears to corroborate LS&Co.'s version of events (see Ainley Decl., Ex. E;
12 see also Schwing Decl., ¶¶ 2,8, 9, Exs. C and D).

13 Nor is this court persuaded that the "final" minutes which are now being sought fall
14 within the parties' agreement to conduct limited post-cutoff discovery through February 15,
15 2007.  Although there appears to be some dispute over the specific terms of the parties'
16 agreement, they have essentially agreed that no further written discovery will be taken except as
17 follows:

> To the extent a deponent in a deposition identifies a particular
> document or readily identifiable and limited category of
> documents that have not been produced in the case and were
> not previously known to a requesting party, the requesting party
> may request those documents or category of documents.  The
> requests shall not be broad, open-ended document requests
> (e.g., "all documents relating to X subject"), but rather shall be
> tailored to the particular document or readily identifiable and
> limited category of documents referenced or identified during
> the deposition.  These requests will be considered on a case by
> case basis.

24 (Scheduling Order, Docket No. 89 at 2:26-3:5).  (Defendants' version of the parties' agreement
25 is the same, except that they contend that the exception applies only to those documents
26 identified in a deposition conducted after August 16, 2006).  (Id.).  Here, plaintiffs and their
27 counsel certainly have been aware of the existence of the minutes (generally) for quite some
28 time.

4

1    At the same time, however, plaintiffs say that they were not previously aware that "final" versions of minutes exist which might differ from the original minutes until the October 26, 2006 deposition of Denise Cahalan. Moreover, the record before this court indicates that Cahalan was unable to answer certain questions because she did not know whether she had the "final" versions of minutes before her. (See Ainley Reply Decl., Ex. C (Calahan Depo. at pp. 254-55)).

Accordingly, this court will grant plaintiffs' motion, but only to the following extent: **No later than February 23, 2007**, LS&Co. shall produce all versions and iterations of the minutes which have been produced to plaintiffs in this action. If all such documents have already been produced (or if multiple versions of them do not exist), then LS&Co. shall serve, **no later than February 23, 2007**, declaration(s) from appropriate person(s) within the company so attesting. Plaintiffs' motion is otherwise denied.

### 4. Unredacted Version of Nancy Handa's Notes

Nancy Handa is a human resources manager at LS&Co. During her deposition, LS&Co. voluntarily produced certain notes authored by Handa that had been used to prepare her for deposition. However, LS&Co. redacted Handa's notes of her June 19, 2002 and September 13, 2002 conversations with LS&Co.'s in-house counsel, Tracey Preston. LS&Co. says that those notes were not used to prepare Handa for deposition and are protected by the attorney-client privilege. Plaintiffs now move for an order compelling LS&Co. to produce them.

Preliminarily, LS&Co. argues that the motion should be denied because plaintiffs never served a document request for the notes in the instant action. However, this court finds that plaintiffs are entitled to test the asserted privilege over the redacted material. Having voluntarily produced the notes (in redacted form), LS&Co., in effect, opened the door to plaintiffs' inquiry as to what was redacted and why.

LS&Co. nevertheless maintains that the notes are exempt from disclosure under the attorney-client privilege. The attorney-client privilege applies "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the

5

client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999-1000 (9th Cir. 2002). The party asserting the privilege has the burden of establishing that the privilege applies. "Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992). Here, LS&Co. contends that the notes in question are privileged because they memorialize confidential communications between Handa and Preston in which Handa sought legal advice from Preston on issues concerning plaintiffs' employment.

Plaintiffs argue that there can be no privilege over the notes because Preston assisted in the preparation of a written warning which was issued to plaintiff Walsh on July 8, 2002. Here, their motion is based upon the apparent theory that the redacted notes pertain to that written notice. As such, plaintiffs contend that (a) Preston was acting primarily as a business (not legal) advisor on a human resources action; and (b) even if the privilege applies, it has been waived because the written warning eventually was disclosed to Walsh after an investigation.

However, based upon its *in camera* review, this court finds that the redacted notes do not appear to discuss or even mention the written warning notice. Indeed, as LS&Co. points out, the September 13, 2002 conversation took place several months after the notice had been issued. Morever, unlike Neuder v. Battelle Pacific Northwest Nat'l Lab., 194 F.R.D. 289 (D.D.C. 2000), cited by plaintiffs, the factual record before this court does not indicate that Preston was acting as a business advisor when she met with Handa. Here, there is nothing in the redacted notes indicating that business (as opposed to legal) advice was being requested or provided. Further, Preston attests that she has never served as a business advisor during her employment at LS&Co. (see Preston Decl., ¶ 2).

Plaintiffs nevertheless maintain that insofar as the written warning was issued to Walsh after an investigation, they are entitled to access the entire record of that investigation, including Handa's notes. Here, they rely upon several cases in which a party was found to have

waived the privilege when it placed the advice of its counsel or the adequacy of its internal investigations at issue in the litigation.  See Sharper Image Corp. v. Honeywell Int'l, Inc., 222 F.R.D. 621 (N.D. Cal. 2004) (concluding in a patent infringement action that defendant waived the privilege as to pre-litigation communications concerning patent infringement where defendant relied upon the advice of its counsel on infringement issues); Peterson v. Wallace Computer Servs., Inc., 984 F. Supp. 821 (D. Vt. 1997) (concluding in an employment discrimination case that the defendant-employer waived the privilege by raising the defense that it conducted an adequate investigation into plaintiff's claims of harassment).  These cases are distinguishable, however.  Here, LS&Co. says that it does not intend to rely upon the advice of its counsel – and, specifically, not upon Preston's conversations with Handa – to defend itself in the instant lawsuit.

Nonetheless, plaintiffs argue that Handa's notes fall within LS&Co.'s express waiver of the attorney-client privilege on certain tax issues.  LS&Co. has indeed affirmatively waived the attorney-client privilege and work product protection as to certain tax-related issues, namely:

> LSLA, Finserv, foreign tax credits, deferred tax assets, check-the-box elections, bad debt and worthless stock transactions, and Internal Revenue Code 956.

(See Schwing Decl., Ex. K).  However, LS&Co. qualified its waiver as follows:

- the waiver as to deferred tax assets is limited to foreign tax credits;
- with respect to LSLA, the privilege is waived "only as to the legitimacy of the historical tax treatment of LSLA through 2002";
- with respect to Internal Revenue Code Section 956, the waiver is limited to "information relating to Finserv"; and
- for check-the-box elections, bad debt and worthless stock transactions, the waiver is limited to the following entities:  Finserv, LS India, LS Mauritius, LS Asia, LS Taiwan, LS APD, LS Indonesia and LS France.

(Id.). Further, LS&Co. stated that it was not waiving the privilege or work product protection as to:

> privileged communications to or from or work product created by its lawyers or their agents in defending against the allegations

7

> raised by Schmidt and Walsh in any complaint filed with a court of law or agency or testimony before the United States government, regardless of whether the communications or work product related to LSLA, Finserv, foreign tax credits, deferred tax assets, check-the-box elections, bad debt and worthless stock transactions, Internal Revenue Code Section 956, and/or any other issue.

(Id.). In essence, plaintiffs assert that LS&Co.'s waiver necessarily extends to any discussions concerning their employment insofar as LS&Co. claims to have fired them for their work on these same tax issues. LS&Co. contends that its waiver is limited solely to substantive tax issues in the case and does not encompass any employment issues.

Based on the record before it, the court finds that LS&Co. has legitimately asserted the attorney-client privilege over the notes in question. The redacted notes appear to corroborate LS&Co.'s claim that they comprise confidential communications between Handa and Preston made to secure legal advice about issues concerning plaintiffs' employment. (See Preston Decl., ¶¶ 3-4). The notes do not discuss the substantive tax issues which are the subject of LS&Co.'s waiver, and this court finds that they do not fall within the scope of that waiver.

Accordingly, plaintiffs' motion to compel the production of Handa's redacted notes is DENIED.

IT IS SO ORDERED.

Dated: February 13, 2007

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

8

1 **5:04-cv-1026 Notice will be electronically mailed to:**

2 Joseph Heathcliff Ainley JAinley@popelka.com, gsimmons@popelka.com

3 Franklin Edward Bondonno fbondonno@popelka.com, dlee@popelka.com

4 Philip Edward Kay phil@nosexualharassment.com

5 Rebecca Justice Lazarus rjustice@gibsondunn.com, rmcbain@gibsondunn.com

6 Jeffry W. Lochner jlochner@popelka.com, kanderson@popelka.com; jlochner@verizon.net

7 Sheila Marie Pierce sheila.pierce@bingham.com

8 Erin E. Schneider eschneider@gibsondunn.com

9 Austin Van Schwing aschwing@gibsondunn.com

10 **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

9