**\*E-FILED ON 2/28/07\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT SCHMIDT and THOMAS WALSH,<br><br>        Plaintiffs,<br>  v.<br><br>LEVI STRAUSS & CO., LAURA LIANG and DOES 1-50,<br><br>        Defendants.<br>_____/<br>RELATED COUNTER-ACTION<br>_____/ | No. C04-01026 RMW (HRL)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF THIRD PARTY DOCUMENTS**<br><br>**[Re: Docket No. 101]** |

Plaintiffs Robert Schmidt and Thomas Walsh move for an order compelling third-party Steven Todrys to produce documents in response to a subpoena. Todrys opposed the motion, as did defendant Levi Strauss & Co. Neither Todrys nor defendants raised issues as to any procedural defects in plaintiffs' subpoena, and the dispute was submitted to this court for resolution. Having considered the moving and responding papers, as well as the arguments presented at the February 20, 2007 hearing, this court denies the motion.

**I. BACKGROUND**

This is an action brought under the Sarbanes-Oxley Act, 18 U.S.C. § 1541A. Plaintiffs are former employees of defendant Levi Strauss & Co. ("LS&Co.") and worked under the supervision of defendant Laura Liang. They claim that they were terminated in retaliation for

filing complaints about defendants' alleged tax fraud and other accounting irregularities. They also allege that defendants defamed them. Defendants contend that plaintiffs were fired for insubordination and for work performance issues. Before filing the instant action, plaintiffs filed a similar wrongful termination lawsuit in San Francisco Superior Court, alleging violations of state common law and statutes. Pursuant to the parties' stipulation, the state court case has been stayed while they litigate the defamation and Sarbanes-Oxley claims here.

Todrys is a tax attorney and a partner at the Simpson, Thacher & Bartlett ("STB") law firm. He was retained by LS&Co. in 2003 to conduct an audit with respect to the tax fraud allegations raised by plaintiffs in their state court lawsuit. STB hired Ernst & Young ("E&Y") to assist Todrys in the investigation. According to plaintiffs, his investigation concluded that LS&Co. had improperly released tax reserves and income for the purpose of lowering its effective tax rate, resulting in a significant overstatement of income.

Plaintiffs served a subpoena on Todrys, seeking his deposition testimony and all documents pertaining to his investigation.[1] According to Todrys, he produced several boxes of documents in response to the subpoena, including all documents that were received from LS&Co. or that were disclosed to LS&Co. and all other entities and persons outside STB and E&Y. However, Todrys says that he has withheld 331 documents (comprising 1,915 pages) which, he claims, comprise his opinion work product (i.e., his mental impressions, conclusions, opinions and legal theories). He represents that these withheld documents were never disclosed to anyone beyond STB or E&Y. Plaintiffs argue that the work product doctrine either does not apply or has been waived. Further, they contend that they have an overriding need for the documents in any event.

## II. DISCUSSION

Preliminarily, this court notes that Todrys' Privilege and Redaction Log identifies several documents which are being withheld (or which were redacted) for reasons other than the work product doctrine. (*See* Rubin Decl., Ex. B). Insofar as no issue has been raised with

---

[1] There is no issue raised here as to Todrys' deposition.

2

1  respect to these documents, this court assumes that the instant motion concerns only those
2  documents that the log identifies as work product.

### A. Todrys' Privilege and Redaction Log

Plaintiffs first argue that Todrys' Privilege and Redaction Log is insufficient under Fed. R. Civ. P. 26(b)(5), which requires that the withheld materials be described "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." FED.R.CIV.P. 26(b)(5). Plaintiffs contend that the log is insufficient because it describes documents by category rather than on an individual basis. Although a document-by-document description is generally preferred, the rules do not mandate a particular level of specificity. *See* Advisory Committee Note to Fed.R.Civ.P. 26(b) (1993 amendments) ("Details concerning time, persons, general subject matter, etc. may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories."). Upon review of Todrys' Privilege and Redaction Log, this court concludes that Todrys has sufficiently described the documents to enable an assessment of the applicability of the work product doctrine.

### B. Applicability of the Work Product Doctrine

In order to qualify as work product, the material in question must have been (1) "prepared in anticipation of litigation or for trial" (2) "by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED.R.CIV.P. 26(b)(3). Plaintiffs argue that the withheld materials do not satisfy these requirements for work product protection.

Plaintiffs first contend that Todrys' investigation was not conducted "in anticipation of litigation." Here, they assert that Todrys was hired merely to advise LS&Co.'s Audit Committee and that his investigation was part of a routine audit in the normal course of LS&Co.'s business. However, plaintiffs acknowledge that at the time Todrys was retained, they had already filed their state court lawsuit. Moreover, the record presented shows that Todrys' retention was precipitated by plaintiffs' state court lawsuit and that the primary purpose of the

engagement was to aid LS&Co.'s Audit Committee in evaluating the issues raised in plaintiffs' complaint. The May 8, 2003 engagement letter specifies that:

- Todrys was being retained to conduct "a legal review and assessment of the international tax transactions (the "transactions") raised in the wrongful termination action recently filed against the Company in the Superior Court of the State of California, San Francisco, CA. (Walsh v. Levi Strauss & Co., et al.), No. CGC-03-419398 (the "Wrongful Termination Suit")";
- Todrys was to provide a "substantive legal analysis of the tax issues raised by the transactions" as well as "legal advice regarding any actions that may be required under federal securities law as a result of your review of the tax issues raised by the transactions"; and
- Todrys "will not perform any non-legal or business advisory functions in the course of this representation."

(*See* Rubin Decl., Ex. D). Further, Albert F. Moreno, LS&Co.'s former General Counsel and Senior Vice President, attests that Todrys was hired as a direct result of plaintiffs' state court action and that the investigation was requested to allow LS&Co.'s Audit Committee to assess the level of risk presented by that lawsuit. (Moreno Decl., ¶ 5).

Plaintiffs next assert that Todrys has no standing to assert any claim of work product here because he has not been hired as any party's trial counsel. They contend that Todrys is merely a subpoenaed third party who should be deemed the functional equivalent of a testifying expert. They point out that Todrys cannot be considered counsel to LS&Co. because the engagement letter identifies LS&Co.'s "Audit Committee" as the client. However, the parties have provided no reason to distinguish between LS&Co. and its Audit Committee. Moreover, nothing in the record before this court indicates that Todrys has been retained or disclosed as an expert witness who would be subject to the disclosure requirements of Federal Rule of Civil Procedure 26. Quite the contrary, LS&Co. represents that it does not intend to rely upon Todrys or his investigation at trial.

1    Plaintiffs cite some authority indicating that Fed.R.Civ.P. 26(b)(3) is inapplicable to
2 persons or entities who are merely subpoenaed in connection with litigation. *See In re*
3 *Subpoena Served on California Public Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989)
4 ("the language of [Fed. R. Civ. P. 26(b)(3)] makes clear that only parties and their
5 representatives may invoke its protection"); *see also Doubleday v. Ruh*, 149 F.R.D. 601, 606
6 (E.D. Cal. 1993) ("the work product immunity cannot be claimed by one who would ordinarily
7 hold the right to assert the immunity unless that person/entity is a party (or a party's
8 representative) to the litigation in which the immunity is asserted. Simply being a subpoenaed
9 witness is not enough.").

10   These cases are distinguishable from the situation under consideration. Unlike the
11 instant action, the cases plaintiffs rely upon concern documents which were not created by or on
12 behalf of any party. *See, e.g., In re Subpoena Served on California Public Utilities Comm'n*,
13 892 F.2d at 781 (concluding that the California Public Utilities Commission could not assert
14 work product protection over its records because the documents were not created by or for a
15 party to the litigation between Westinghouse and California Edison). Moreover, in *Doubleday*,
16 the court stated that the criminal nature of the prior action was a key factor in its analysis; and,
17 it expressly limited its holding to situations where a criminal action is followed by a civil
18 lawsuit. *See Doubleday*, 149 F.R.D. at 607 n.6.

19   Here, by contrast, Todrys was retained as LS&Co.'s attorney, and the materials in
20 question were created on LS&Co.'s behalf. Accordingly, this court is satisfied that the withheld
21 documents constitute protected work product. The court now turns to the parties' arguments as
22 to whether that protection has been waived.

23 **C.    Whether the Work Product Protection has been Waived**

24   "[T]he work product privilege is not automatically waived by any disclosure to third
25 persons. . . . Rather, the courts generally find a waiver only if the disclosure 'substantially
26 increases the opportunity for potential adversaries to obtain the information.'" *Samuels v.*
27 *Mitchell*, 155 F.R.D. 195, 201 (N.D. Cal. 1994) (quoting *In Re Grand Jury*, 561 F. Supp. 1247,
28 1257 (E.D.N.Y. 1982)).

1  In this case, plaintiffs' argument as to waiver is two-fold.[2]  First, they assert that Todrys'
2  work product claims have been waived by virtue of LS&Co.'s express waiver of the attorney-
3  client privilege and the work product protection with respect to certain substantive tax issues
4  raised in plaintiffs' complaint.  Second, plaintiffs contend that Todrys himself has waived any
5  work product claim by (a) producing other documents concerning his investigation in response
6  to the subpoena at issue; and (b) disclosing to LS&Co. and several government entities his
7  opinions and conclusions with respect to his investigation.

8  LS&Co. has, with some qualification, expressly waived the attorney-client privilege and
9  the work product doctrine with respect to certain substantive tax issues raised in plaintiffs'
10 complaint.  (*See* Schwing Decl., Ex. A).  LS&Co. now says that the waiver was intended to
11 apply only to the work product of its in-house counsel and argues that it does not control
12 Todrys' work product in any event.  Plaintiffs disagree that LS&Co.'s waiver should be so
13 narrowly construed.  Nevertheless, they do not seriously dispute that, unlike the attorney-client
14 privilege (which belongs solely to the client), the work product protection also belongs to the
15 attorney.  *See generally In re Sealed Case*, 676 F.2d 793, 809 n.56 (D.C. Cir. 1982) ("To the
16 extent that the interests do not conflict, attorneys should be entitled to claim privilege even if
17 their clients have relinquished their claims."); *In re Special September 1978 Grand Jury (II)*,
18 640 F.2d 49, 63 (7th Cir. 1980) ("[T]he work product doctrine may be asserted by both the
19 client and the attorney . . .."); *Doubleday*, 149 F.R.D. at 606 n.5 (E.D. Cal. 1993) (noting "the
20 commonly accepted law that the work product privilege equally belongs to the attorney who
21 prepared it, and not just the party for whom it was prepared.").  Here, there is no indication that
22 Todrys consented to any waiver of his work product.

23 Plaintiffs nonetheless argue that Todrys effected a broad subject matter waiver of the
24 work product protection by producing documents in response to their subpoena and by
25 disclosing information about his investigation to several government entities, including the

---

[2] At the motion hearing, plaintiffs' counsel advised that some of the withheld materials had been inadvertently produced by, and later returned to, Todrys. However, he stated that plaintiffs do not contend that the inadvertent production constitutes a waiver of the work product protection.

6

1 Internal Revenue Service and the Securities Exchange Commission.  Because the withheld
2 materials pertain to the same investigation, plaintiffs contend that it would be unfair to allow
3 Todrys to selectively waive the work product protection.

4 However, this is not a situation where Todrys is refusing to produce documents which
5 were otherwise disclosed to LS&Co. or to the government.  Indeed, as noted above, Todrys
6 represents that he is only withholding internal notes, drafts, memoranda, emails, etc. which
7 were never disclosed outside STB and E&Y.  Plaintiffs have otherwise been given all
8 documents concerning his investigation that Todrys or his colleagues received from LS&Co. or
9 which were disclosed beyond his firm and E&Y.  Moreover, as noted above, LS&Co. says that
10 it has no intention of relying upon Todrys or his investigation at trial.  *See, e g., Hollinger Int'l,*
11 *Inc. v. Hollinger, Inc.*, 230 F.R.D. 508 (N.D. Ill. 2005) (concluding that where documents given
12 to the SEC were also produced to the opposing party, undisclosed documents used to prepare
13 corporate committee's report were nonetheless protected by the work product doctrine and the
14 protection was not waived).

15 Plaintiffs are not aided by their cited cases, which concern analysis of the attorney-client
16 privilege (which is not at issue here); situations in which the same documents which were
17 selectively disclosed to one entity, but not another; or cases in which the material in question
18 was relied upon (or otherwise put at issue) by the party opposing disclosure.  *See, e.g., Weil v.*
19 *Investment/Indicators, Research and Mgmt., Inc.*, 647 F.2d 18 (9th Cir. 1981) (analyzing claims
20 of attorney-client privilege); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 46 (D. Md. 1974)
21 (stating that "privileges cannot be used as both a sword and a shield," but concluding that
22 confidential information disclosed during settlement negotiations did not constitute a waiver);
23 *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003) (finding, in a criminal action, that
24 the work product protection was waived as to documents disclosed to the government); *Atari*
25 *Corp. v. Sega of America*, 161 F.R.D. 417 (N.D. Cal. 1994) (concluding that the work product
26 doctrine did not apply to a defense expert's videotaped interview where the defendant
27 voluntarily produced the tape to plaintiff).

28 Accordingly, this court does not find that the work product protection has been waived.

7

### D    **Plaintiffs' Asserted Need for the Documents**

Plaintiffs nonetheless contend that they have a substantial need which overrides Todrys' interest in protecting his work product. It is true that the work product doctrine is not absolute. However, work product may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED.R.CIV.P. 26(b)(3). Courts generally distinguish between ordinary work product (purely factual information) and opinion work product (mental impressions, conclusions and legal theories) and require a stronger showing of need with respect to the latter. *See, e.g., Holmgren v. State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) ("A party seeking work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product.") (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401-02 (1981)); *Bio-Rad Labs., Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 122 (N.D. Cal. 1990) ("'an attorney's opinion work product is discoverable where such information is directly at issue and the need for production is compelling") (quoting *Handguards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 933 (N.D. Cal. 1976)).

Here, the record appears to support Todrys' representation that the withheld materials are not ordinary work product and comprise internal memoranda, notes, drafts, emails, etc. containing mental impressions, legal conclusions and opinions. Plaintiffs argue that Todrys' work product "go[es] to the very heart of [their] allegations . . .." (Mot. at 12:5). However, in the instant action, plaintiffs allege that they were wrongfully terminated for complaining about LS&Co.'s alleged financial improprieties. This court is unpersuaded that Todrys' work product pertaining to his after-the-fact investigation is relevant to their claims.

Plaintiffs nevertheless maintain that they need these documents because they believe that Todrys' analysis is flawed and that the "best evidence" of those flaws are in the withheld materials. They speculate that the withheld materials may reveal that certain information was ignored by Todrys in his final report. Plaintiffs further argue that they need Todrys' work product to impeach witnesses – namely, Paul Smith, LS&Co.'s current Vice President of Global

8

Tax. According to plaintiffs, Smith was formerly employed at E&Y, and they believe that Smith assisted Todrys in the investigation. As such, they say that they need to access Todrys' work product because they believe that those documents contain opinions and conclusions which will impeach Smith's testimony, as well as that of other (unspecified) witnesses.

These arguments fail to convince. Plaintiffs apparently have Todrys' report, as well as the documents Todrys used to form his opinions. They are free to conduct their own evaluation of the material. Reportedly, plaintiffs have deposed many of the witnesses identified in Todrys' documents. They also deposed Todrys himself about his investigation. In sum, plaintiffs have failed to show why they need Todrys' work product to challenge any perceived weaknesses or errors in his analysis. Moreover, since LS&Co. has no intention of using Todrys or his investigation as part of its defense, plaintiffs have not convincingly demonstrated that the withheld documents will be needed for impeachment purposes.

### III.  ORDER

Based on the foregoing, IT IS ORDERED THAT plaintiffs' motion to compel is DENIED.

Dated:   February 28, 2007

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

9

**5:04-cv-1026 Notice will be electronically mailed to:**

Joseph Heathcliff Ainley   JAinley@popelka.com, gsimmons@popelka.com

Franklin Edward Bondonno   fbondonno@popelka.com, dlee@popelka.com

Philip Edward Kay   phil@nosexualharassment.com

Rebecca Justice Lazarus   rjustice@gibsondunn.com, rmcbain@gibsondunn.com

Jeffrey A. Leon   jleon@leonandleon.com, leonandleon@leonandleon.com

Jeffry W. Lochner   jlochner@popelka.com, kanderson@popelka.com; jlochner@verizon.net

Sheila Marie Pierce   sheila.pierce@bingham.com

Gabriel Neil Rubin   grubin@stblaw.com, jlaw@stblaw.com; hlelaind@stblaw.com

Erin E. Schneider   eschneider@gibsondunn.com

Austin Van Schwing   aschwing@gibsondunn.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

10