**E-FILED on**   3/28/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT SCHMIDT and THOMAS WALSH,<br><br>    Plaintiffs,<br><br>    v.<br><br>LEVI STRAUSS & CO., LAURA LIANG, and DOES 1 through 50, inclusive,<br><br>    Defendants. | No. C-04-01026 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STRIKE JURY DEMAND FOR SARBANES-OXLEY CLAIM<br><br>**[Re Docket No. 140]** |

    Defendants Levi Strauss & Co. ("Levi") and Laura Liang ("Liang") move to strike plaintiffs' Robert Schmidt's ("Schmidt") and Thomas Walsh's ("Walsh") demand for a jury trial as to plaintiffs' claim pursuant to section 806 of the Sarbanes-Oxley Act of 2002, codified at 18 U.S.C. § 1514A. Defendants argue that there is no right to a jury trial conferred by either § 1514A or the Seventh Amendment of the United States Constitution. Plaintiffs oppose the motion. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court GRANTS defendants' motion to strike plaintiffs' demand for jury trial with respect to their Sarbanes-Oxley Act, 18 U.S.C. § 1514A, claim. However, in light of the lack of appellate authority addressing this issue, defendants' motion is granted without prejudice to plaintiffs' renewing a demand for jury trial if later legal authority supports such a demand.

# I. BACKGROUND

Levi manufactures and sells clothing worldwide. Compl. ¶ 9. Although its outstanding stock is privately-held, it has debt securities registered pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. and is required to file reports thereunder. Schmidt and Walsh are former employees in Levi's global tax department. Compl. ¶ 13. Walsh worked at Levi from September 27, 1999 to December 10, 2002. *Id.* ¶ 16. Schmidt worked at Levi from June 18, 2001 to December 10, 2002. *Id.* ¶ 17. Both Schmidt and Walsh reported directly to defendant Liang, Levi's vice president of international tax. *Id.* ¶ 18.

Plaintiffs allege that Levi engaged in a number of improper tax transactions, particularly with respect to their foreign operations. *See id.* ¶¶ 28-71. Plaintiffs further allege that they were assigned to certain tax research and reconciliation projects that caused them to become aware of the purported tax schemes. *Id.* ¶¶ 72, 76, 87. Plaintiffs allege that they confronted Liang and Liang's superior Vincent Fong, about their concerns of improper tax transactions and accounting and were either told to "forget" the issue, *id.* ¶ 78, or had their roles and responsibilities reduced, *id.* ¶¶ 79, 83, 90. Plaintiff Schmidt also alleges that he became "subject to a series of petty harassments and disciplines by Liang." *Id.* ¶ 83. Liang terminated Schmidt's and Walsh's employment with Levi on December 10, 2002. *Id.* ¶¶ 84, 90.

Plaintiffs filed the present suit alleging a number of state claims, although apparently the parties have stipulated to only proceed on the defamation claim in this suit on which a motion for summary judgment is pending, as well as a claim for violation of section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A. In addition to reinstatement and back pay, plaintiffs seek, and the statute authorizes, "compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney['s] fees pursuant to 18 U.S.C. [§] 1514A(c)(2)(C)" for their Sarbanes-Oxley claim. Compl., Prayer, ¶ 4; *see also id.* ¶ 96 (alleging special damages).

## II. ANALYSIS

Fed. R. Civ. P. 39 provides in relevant part: "When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless . . . the court upon motion . . . finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States." The issue here is whether plaintiffs are entitled to a jury trial on their § 1514A claim pursuant to the Seventh Amendment. This is a matter of first impression in this district, and few other district courts have addressed it. "[B]efore inquiring into the applicability of the Seventh Amendment, we must 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999) (quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998)) (additional citations omitted).

### A. Section 1514A of the Sarbanes-Oxley Act

Plaintiffs' first claim alleges a violation of § 1514A. Section 1514A provides "whistleblower protection" for employees of publicly traded companies who are "discharge[d], demote[d], suspende[d], threatene[d], harasse[d], or in any other manner discriminate[d] against . . . in the terms and conditions of employment because of any lawful act done by the employee":

> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by--
>
> (A) a Federal regulatory or law enforcement agency;
>
> (B) any Member of Congress or any committee of Congress; or
>
> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or
>
> (2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

18 U.S.C. § 1514A(a).

Section 1514A may be enforced by filing a timely complaint with the Secretary of Labor and, if the Secretary of Labor has not issued a final decision within 180 days and there is no showing of delay due to bad faith on the part of the complaining employee, by "bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy."  18 U.S.C. § 1514A(b)(1).

Section 1514A provides for specific remedies:

(1) In general.--An employee prevailing in any action under subsection (b)(1) shall be entitled to all relief necessary to make the employee whole.

(2) Compensatory damages.--Relief for any action under paragraph (1) shall include--

(A) reinstatement with the same seniority status that the employee would have had, but for the discrimination;

(B) the amount of back pay, with interest; and

(C) compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

18 U.S.C. § 1514A(c).

### B. Construction of Statute

Defendants argue that § 1514A, by its plain and unambiguous terms, does not provide for a statutory right to a jury trial.  Plaintiffs argue that the terms are not unambiguous and legislative history supports congressional intent to provide for a right to a jury trial.  Two district courts have analyzed the issue of the right to a jury and concluded that there is no such right, *Walton v. Nova Information Systems*, 514 F.Supp. 2d 1031 (E.D. Tenn. 2007) and *Murray v. TXU*, 2005 WL 1356444 (N.D. Texas 2005).  Two other district courts have denied without prejudice motions to strike jury demands because of the uncertainty in the law.  Those cases are *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310, 325 (S.D.N.Y. 2006), and *Hanna v. WCI Communities, Inc.*, 348 F. Supp. 2d 1332, 1334 (S.D. Fla. 2004).  They left open the possibility of later striking the jury demands.  *See Fraser*, 417 F. Supp. 2d at 325 ("At this time, the Court denies Defendants' motion to strike a jury trial on the SOX claims without prejudice to bring this motion again prior to trial.  At

that later juncture, the Court might have the benefit of guidance from additional courts that have considered the issue."); *Hanna*, 348 F. Supp. 2d at 1334 ("Rather than address the issue at this time, the court will deny the defendants' motion to strike a jury trial in this case without prejudice to bring this motion again if all of the parties' case-dispositive motions have been denied prior to trial. At that time, the court might have the benefit of guidance from other courts that have considered the availability of jury trials under the Sarbanes-Oxley Act.").

In *Murray*, the court concluded that there is no right to a jury trial under § 1514A and struck the plaintiff's demand for a jury trial as to that claim.[1] 2005 WL 1356444, *1. The court first noted that the plain text of the Sarbanes-Oxley Act did not provide a right of trial by jury because the words "jury trial" do not appear anywhere in the text of the statute. *Id.* Next, the court rejected the plaintiff's argument that because the Act permits a claimant to bring "an action at law or equity for de novo review" it confers a right to a jury trial. Specifically, citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707-08 (1999), the court noted that the United States Supreme Court has held that the phrase "action at law" is insufficient to imply a statutory right to a jury trial. *Id.*; *see City of Monterey*, 526 U.S. at 708 ("We decline, accordingly, to find a statutory jury right under § 1983 based solely on the authorization of 'an action at law.'"). The court agrees that the phrase "action at law" is insufficient to imply a right to a jury trial under § 1514A.[2]

In *Walton* the court's reasoning was similar to that in *Murray*. The court pointed out that the statute provides for restitutionary relief, equitable in nature, and that there is no Seventh Amendment

---

[1] However, the court also noted that it would consider an advisory jury if requested by the parties. *Murray*, 2005 WL 1356444 at *5.

[2] In their opposition, plaintiffs concede that the statute does not expressly provide for a jury trial. However, plaintiffs also argue that because § 1514A provides for remedies which include both compensatory damages and special damages, the court can construe the statute to provide for a right to a jury trial. The court is not persuaded. A provision for damages does not necessarily equate to a provision for a right to a jury trial. *See Feltner*, 523 U.S. at 346 (concluding that although 17 U.S.C. § 504(c) provides for statutory damages, the statute itself did not confer a right to a jury trial because the statutory text "make[s] no mention of a right to a jury trial or, for that matter, to juries at all"); *compare Lorillard v. Pons*, 434 U.S. 575, 583 (1978) (finding that it was proper to imply a statutory right to a jury trial under the Age Discrimination in Employment Act where the Act included a specific provision for "legal relief" and specifically incorporated the procedures under the Fair Labor Standards Act which had been interpreted to guarantee trial by jury in private actions). Rather, the court considers these provisions as part of the Seventh Amendment analysis. *See Feltner*, 523 U.S. at 346 (considering the statutory remedies in Seventh Amendment analysis).

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE JURY DEMAND FOR SARBANES-OXLEY CLAIM
No. C-04-01026 RMW
SPT                                              5

right to a jury trial since the statute provides for initial review by an administrative agency. 514 F.Supp. 2d at 1033-36.

Plaintiffs argue that the legislative history shows that Congress intended a right to a jury for § 1514A claims. In particular, in presenting the bill Senator Patrick Leahy commented:

> Only if there is not final agency decision within 180 days of the complaint (and such delay is not shown to be due to the bad faith of the claimant) may he or she bring a de novo case in federal court with a jury trial available (See United States Constitution, Amendment VII; Title 42 United States Code, Section 1983). Should such a case be brought in federal court, it is intended that the same burdens of proof which would have governed in the Department of Labor will continue to govern the action. Subsection (c) of this section requires both reinstatement of the whistleblower, backpay, and all compensatory damages needed to make a victim whole should the claimant prevail.

148 Cong. Rec. S7418-01 (daily ed. July 26, 2002) (statement of Sen. Patrick Leahy). However, although Senator Leahy might have authored the whistleblower provision later codified as § 1514A, the comments of one senator during floor debates is accorded little weight in inferring congressional intent. *See In re Kelly*, 841 F.2d 908, 912 n.3 (9th Cir. 1988) ("To the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent. . . . Stray comments by individual legislators, not otherwise supported by statutory language or committee reports, cannot be attributed to the full body that voted on the bill.") (citing *Garcia v. United States*, 469 U.S. 70, 76 (1984); *Zuber v. Allen*, 396 U.S. 168, 186 (1969)); *see also Garcia*, 469 U.S. at 76 (holding that "the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation") (citation and internal quotation marks omitted). Moreover, Senator Leahy's comment only reflects his belief that pursuant to a Seventh Amendment analysis there would be a jury right; he does not propose that the statute creates a right to a jury trial and therefore supplants the need for a Seventh Amendment analysis.

Accordingly, the court concludes that the statutory text of § 1514A does not imply a statutory jury right. The court must next consider whether there is a right to a jury trial under the Seventh Amendment. *See City of Monterey*, 526 U.S. at 708.

United States District Court
For the Northern District of California

### C. Seventh Amendment Analysis

The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The first step of the Seventh Amendment analysis is to "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989) (quoting *Tull v. United States*, 481 U.S. 412, 417-18 (1987)). The next step is to "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* Finally, if these two factors weigh in favor of finding an entitlement to a jury trial, the court considers whether Congress has assigned adjudication of the statutory claim to "a non-Article III adjudicative body that does not use a jury as factfinder." *Id.*

#### 1. Analogous Claim at Common Law

Here, neither party makes any argument as to the first step in the Seventh Amendment analysis. Plaintiffs' Sarbanes-Oxley claim is essentially a complaint that their employment was allegedly wrongfully terminated in retaliation for their insistence that defendants comply with the law and with requests by the Internal Revenue Service and the external auditors. Section 1514A makes it unlawful to terminate an employee's employment because of the employee's assistance in any investigation related to certain securities laws. A close analogy might be made to the claim of wrongful discharge which existed at common law. *See e.g., Abraham v. County of Hennepin*, 639 N.W.2d 342, 352 (Minn. 2002) (noting that wrongful discharge claims existed at common law as early as 1861). A wrongful discharge claim sounds in tort and thus gives rise to the constitutional right to jury trial. *Id.; see also Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 176 (1980) ("[A] wrongful discharge suit exhibits the classic elements of a tort cause of action."). Thus, the first step of the Seventh Amendment analysis indicates that plaintiffs' Sarbanes-Oxley claim is analogous to one that would be brought in a court of law prior to the merger of the courts of law and equity. However, this determination is not conclusive; the second step of the Seventh Amendment analysis is more important than the first step. *Granfinanciera*, 492 U.S. at 42 ("The second stage of [the Seventh Amendment] analysis is more important than the first.") (citing *Tull*, 481 U.S. at 421).

#### 2. Remedy Sought

As to the second step, defendants argue that § 1514A provides only for equitable relief and plaintiffs have sought only equitable relief for their Sarbanes-Oxley claim. Plaintiffs argue that the compensatory and special damages remedies provided by the statute are essentially monetary, and therefore legal, relief. Pls.' Opp'n at 6:8-16 (citing *City of Monterey*, 526 U.S. at 712). Section 1514A provides:

> (1) In general.--An employee prevailing in any action under subsection (b)(1) shall be entitled to all relief necessary to make the employee whole.
>
> (2) Compensatory damages.--Relief for any action under paragraph (1) shall include--
>
> (A) reinstatement with the same seniority status that the employee would have had, but for the discrimination;
>
> (B) the amount of back pay, with interest; and
>
> (C) compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

It is true, as defendants argue, that remedies of reinstatement, hiring, and back pay are generally equitable remedies. *See West v. Gibson*, 527 U.S. 212, 217 (1999). Although in some cases back pay and related benefits may be considered legal remedies, *see Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990), that does not appear to be the case here. In *Chauffeurs*, the only remedy sought was back pay and benefits, which the Court determined was compensatory and a form of monetary relief traditionally offered in courts of law. There, the back pay and benefits sought were amounts that would have been paid had the union properly processed plaintiffs' grievances. The Court reasoned that although not all awards of monetary relief must necessarily be legal relief, the remedy sought by the respondents in that case did not warrant an exception to the general rule that the damages sought were legal. Specifically, the Court found that the back pay and benefits sought by the plaintiffs were not restitutionary in nature because they were not wrongfully withheld pay. Rather, the plaintiffs would have gotten the pay and benefits had their grievances been processed by the union. *Id.* at 571. The court also found that because the plaintiff sought *only* monetary damages the pay and benefits sought were not "a monetary award 'incidental to or intertwined with injunctive relief' which may be equitable." *Chauffeurs*, 494 U.S. at 570

1  (quoting *Tull*, 481 U.S. at 424). Therefore, the court concluded that the remedy sought was legal in
2  nature. *Id.* However, *Tull* is not applicable to the present case.

3        As an initial matter, unlike the plaintiffs in *Chauffeurs*, plaintiffs seek more than a monetary
4  award. Plaintiffs seek injunctive relief, namely, to be reinstated with the same seniority status but
5  for the alleged retaliation. *See* compl., prayer ¶ 3. Plaintiffs further seek all remedies available
6  under § 1514A. Further, by contrast to *Chauffeurs*, the back pay and other damages sought by
7  plaintiffs are all in conjunction with the requested reinstatement. *See Hubbard v. Adm'r, E.P.A.*, 982
8  F.2d 531, 537-38 (D.C. Cir. 1992) (noting that courts have routinely found that plaintiffs seeking
9  back pay are asking for equitable relief and thus are not entitled to a jury trial on the basis that "the
10 back pay is incidental to, or an element of, the equitable remedy of reinstatement—not on a notion
11 that back pay itself is specific and not compensatory").

12       Second, the purpose of § 1514A's remedial provisions is restitution rather than
13 compensation. This is a critical distinction. *See Lorillard*, 434 U.S. at 584 ("[I]n deciding whether a
14 statutory right to jury trial exists, it is the remedial and procedural provisions of the . . . [statute] that
15 are crucial.). Restitution differs from an award of damages or penalties in that it seeks only to
16 "restor[e] the status quo and order[] the return of that which rightfully belongs to the [plaintiff]."
17 *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946); *see also Tull*, 481 U.S. at 424. Section
18 1514A's remedies generally seek to award a prevailing employee "all relief necessary to make the
19 employee whole." 18 U.S.C. § 1514A(c)(1). Thus, its stated purpose is to restore the status quo
20 prior to the termination of the employee's employment. *Compare Tull*, 481 U.S. at 423 ("Subsection
21 1319(d)'s authorization of punishment to further retribution and deterrence clearly evidences that
22 this subsection reflects more than a concern to provide equitable relief."). Historically, an action for
23 restitution falls within the realm of the court of equity. *Porter*, 328 U.S. at 402.

24       Moreover, although § 1514A also provides for certain monetary awards to the prevailing
25 employee, such remedies appear to be restitutionary in nature or otherwise incidental to or
26 intertwined with the injunctive relief. First, the structure of the remedial provision supports such a
27 conclusion. Section 1514A sets forth the remedies of reinstatement, back pay, and certain special
28 damages in one statutory provision. *Compare Tull*, 481 U.S. at 425 (because the statute "does not

intertwine equitable relief with the imposition of civil penalties," but "[i]nstead each kind of relief is separably authorized in a separate and distinct statutory provision," the legal relief is *not* incidental to or intertwined with the equitable relief.") (citation omitted).  Second, "a court in equity may award monetary restitution as an adjunct to injunctive relief" or "incidental to or intertwined with injunctive relief." *Tull*, 481 U.S. at 424 (citing Porter, 328 U.S. at 399).  Courts have concluded that where back pay is incidental to, or an element of, the equitable remedy of reinstatement, it constitutes equitable relief. *See, e.g., Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291-92 (1960) (holding that the district court had the power, incident to its injunctive powers, to award restitutionary back pay under the Fair Labor Standards Act).

Here, the statute does not permit a broad claim for compensatory or special damages, but provides particularly for (1) back pay (with interest) and (2) compensation for any special damages *sustained as a result of the discrimination*, including litigation costs, expert witness fees, and reasonable attorney fees. 18 U.S.C. § 1514A(c)(2).[3]  Unlike the back pay in *Chauffeurs*, the back pay provided for by § 1514A is the pay that the plaintiffs would have received had their employment not been terminated.  It is restitutionary in nature because it seeks to restore the plaintiffs to their status quo had the alleged retaliation not occurred.  This is distinguishable from the back pay at issue in *Chauffeurs* where the plaintiffs sought the pay they *should have* received but for the union's failure to process their grievance. § 1514(2)(C)'s additional relief of litigation costs, expert witness fees, and reasonable attorney's fees also appear to be incidental to or intertwined with the restitutionary relief, namely to reinstate the plaintiffs and make them whole.  The enumerated items all appear to be costs that the plaintiffs would be "out-of-pocket" because of the alleged wrongful discharge and which must be reimbursed to plaintiffs in order to "make them whole."  They do not represent discretionary monetary relief which, by contrast, would be tried before a jury. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352-53 (1998) (holding there is entitlement to a jury trial for a claim of statutory damages under § 504(c) of the Copyright Act because "there is

---

[3] Notably, the paragraph providing for such damages is prefaced by a reference back to the preceding statutory provision setting forth that the prevailing employee shall be entitled relief necessary to make the employee whole. *See* 18 U.S.C. § 1514A(c)(2) (referencing 18 U.S.C. § 1514A(c)(1)).

1  historical evidence that cases involving discretionary monetary relief were tried before juries" and
2  because the statutory damages in § 504(c) may also serve "purposes traditionally associated with
3  legal relief, such as compensation and punishment").

4      Although the enumerated relief in § 1514A(c)(2)(C) is prefaced with the term "including,"
5  which might suggest a non-exhaustive list of potential monetary relief, *see West v. Gibson*, 527 U.S.
6  212, 217 (1999) ("the preceding word 'including' makes clear that the authorization is not limited to
7  the specified remedies there mentioned"), the court finds that any additional remedies not mentioned
8  would be limited to similar relief to make the employee whole. *See Fed. Maritime Comm'n v.*
9  *Seatrain Line, Inc.*, 411 U.S. 726, 734 (1973) ("It is, of course, a familiar canon of statutory
10 construction that such clauses are to be read as bringing within a statute categories similar in type to
11 those specifically enumerated."); *Hamilton v. Madigan*, 961 F.2d 838, 840 (1992) (noting that it is a
12 basic canon of statutory construction that "when general and specific words are associated, as in the
13 statutory definition of nonrecurring lump-sum payments and the accompanying list of examples,
14 then the general words are construed to embrace things similar to those enumerated by the specific
15 words"); *see also Sec. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 468 U.S. 207, 218
16 (1984) ("Under the familiar principle of statutory construction that words grouped in a list should be
17 given related meaning.") (internal quotations and citation omitted).[4]

18     Such an interpretation is consistent with the general purpose set forth in § 1514A(c)(1). *See*
19 *Davis v. Michigan Dep't. of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of
20 statutory construction that the words of a statute must be read in their context and with a view to
21 their place in the overall statutory scheme."); *see also Fed. Land Bank of St. Paul v. Bismarck*
22 *Lumber Co.*, 314 U.S. 95, 100 (1941) (holding that the term "'including' is not one of all-embracing
23 definition, but connotes simply an illustrative application of the general principle"). Thus, the court
24 construes § 1514A to limit any relief under the "special damages" category to remedies that are
25 restitutionary in nature or otherwise intertwined with the reinstatement remedy.

26     This finding is also consistent with the reasoning of the *Murray* court, which concluded that

---

[4]     In addition, the general purpose of the statutory remedies, as stated in § 1514A(c)(1) would serve as a limit on the types of damages that could be included.

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE JURY DEMAND FOR SARBANES-OXLEY CLAIM
No. C-04-01026 RMW
SPT      11

"the [Sarbanes-Oxley] Act contains no express wording of any *legal* remedies" and "no mention is made of any type of damage that might be considered non-pecuniary." 2005 WL 1356444 at *2, *3 (emphasis in original).[5] In *Murray*, the court analogized the remedies offered by § 1514A to those offered by Title VII prior to the 1991 amendments to that title, which have been characterized by the United States Supreme Court as equitable in nature. Although the text and structure of § 1514A differ in some respects to that of Title VII, both statutes are intended to be remedial in nature and to return the employee to the status quo absent the alleged discrimination. The court finds such an analogy to persuasively support a finding that § 1514A's remedies are intended to be equitable in nature. The pre-1991 version of Title VII provided that "the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g).[6] Payment of reasonable attorney's fees was also allowed under Title VII. *Id.* In *United States v. Burke*, 504 U.S. 229, 239 (1992) (overruled by Internal Revenue Service Rev. Rul. 93-88 and by Pub. L. 102-166, 105 Stat. 1073 (Civil Rights Act of 1991))[7], the Court held that the Title VII remedies:

> consist[] specifically of the unlawful deprivation of full wages earned or due for services performed, or the unlawful deprivation of the opportunity to earn wages through wrongful termination. The remedy, correspondingly, consists of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination.

Based on this court's review of the statutory text, purpose of the remedies, and overall

---

[5] As to special damages, the *Murray* court concluded that the plaintiff had failed to specifically plead any special damages and therefore the plaintiff's claim did not include a request for the special damages permitted by § 1514A. 2005 WL 1356444 at *2-*3. The court also concluded that even if plaintiff had made claims for reputational injury and punitive damages as he asserts, § 1514A does not allow such claims. *Id.*

[6] The Civil Rights Act of 1991 provided for a right to a jury trial for claims of intentional discrimination and also provided for remedies including "'future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses,'" as well as punitive damages. *See id.* at 241 n.12 (quoting Civil Rights Act of 1991, Pub. Law No. 102-166, 105 Stat. 1073 (1991)).

[7] *Burke* involved the issue of whether a damages award from a Title VII claim was considered a redress for a tort-like personal injury within the meaning of I.R.C. § 104(a)(2) and therefore excludable from taxable income for federal income tax purposes.

statutory scheme, the court concludes that the relief provided by § 1514A is equitable in nature, or otherwise intertwined or inextricably linked the equitable relief of reinstatement. Because the second factor weighs more importantly than the first in the Seventh Amendment analysis, the court concludes that a balance of the two factors weighs against there being a right to a jury trial for plaintiffs' Sarbanes-Oxley claim.

### 3. Public Right

Even if the court were to conclude that the first two factors weigh in favor of a right to a jury trial, the court nevertheless finds that under the third factor of the Seventh Amendment analysis there is no right to a jury trial. If both the first and second factors of the Seventh Amendment analysis weigh in favor of finding an entitlement to a jury trial, the court next considers whether Congress has assigned adjudication of the statutory claim to "a non-Article III adjudicative body that does not use a jury as factfinder." *Granfinanciera*, 492 U.S. at 42 (quoting *Tull*, 481 U.S. at 417-18). Defendants argue that this factor weighs in favor of a conclusion that there is no Seventh Amendment right to a jury trial for § 1514A claims. The court agrees. "[I]f a statutory cause of action . . . is not a 'public right' for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking 'the essential attributes of the judicial power.'" *Id.* at 53 (quoting *Crowell v. Benson*, 285 U.S. 22, 51 (1932)). "Conversely, if Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder. *Id.* at 53-54. Here, § 1514A provides:

> A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by (A) filing a complaint with the Secretary of Labor; or (B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

Thus, Congress has expressly assigned the right to adjudicate a § 1514A claim to the Secretary of Labor, a non-Article III tribunal, to the extent the Secretary of Labor issues a final decision within 180 days of the filing of the complaint.[8]

The public rights doctrine "is grounded in a historically recognized distinction between matters that could be conclusively determined by the Executive and Legislative Branches and matters that are inherently judicial." *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 68 (1982). "The crucial question . . . is whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.'" *Granfinanciera*, 492 U.S. at 54 (quoting *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 593-94 (1985)). If the court were to conclude that a § 1514A action does not involve a public right (and therefore weighs in favor of a right to a jury), it necessarily must conclude that Congress's assignment of adjudication rights to the Secretary of Labor was unconstitutional.

The court does not find that this factor weighs in favor of a right to a jury. As an initial matter, this court presumptively considers Congress's assignment of adjudicative rights to a non-Article III agency constitutional. *See id.* at 61 ("To be sure, we owe some deference to Congress' judgment after it has given careful consideration to the constitutionality of a legislative provision.") (citing *Northern Pipeline Constr. Co.*, 458 U.S. at 61). Moreover, the court finds that § 1514A can be construed as involving a matter of public right or a matter in which the private rights are so closely integrated into a public regulatory scheme that Congress's assignment is constitutional. Section 1514A serves to protect those employees who report violations of federal securities laws to regulatory agencies, law enforcement agencies, Congress, or their supervisors. 18 U.S.C. § 1514A(a)(1)-(2). The statute also protects employees who assist in investigations of such violations.

---

[8] Where the Secretary of Labor adjudicates the claim, § 1514A incorporates the rules and procedures under 49 U.S.C. § 42121(b); thus, the Secretary's final decision is appealable to the court of appeals. 18 U.S.C. § 1514A(b)(2)(A).

ORDER GRANTING DEFENDANT'S MOTION TO STRIKE JURY DEMAND FOR SARBANES-OXLEY CLAIM
No. C-04-01026 RMW
SPT          14

*Id.* In particular, § 1514A works in conjunction with 18 U.S.C. §§ 1341, 1343, 1344, and 1348,[9] as well as rules promulgated by the Securities and Exchange Commission, and other federal securities law by protecting those employees who assist to further the enforcement of such laws and regulations.[10] It is not disputed that Congress has the power to regulate companies with registered securities or are otherwise required to file reports under the Securities Exchange Act. The Sarbanes-Oxley Act was enacted for the purpose of protecting investors of such companies by improving the accuracy and reliability of corporate disclosures made pursuant to the federal securities laws. *See* Sarbanes-Oxley Act, , Pub. L. No. 107-204, 116 Stat 745 (2002); H.R. Conf. Rep. 107-610, *1 (2002), *as reprinted in* 2002 U.S.C.C.A.N. 542. In protecting employees of such companies from retaliation for reporting non-compliance with the laws and rules of the federal securities regulatory scheme and assisting in investigation, § 1514A serves to encourage compliance, encourage reporting of non-compliance, and deterring violations. Thus, § 1514A may be reasonably interpreted as being closely integrated into a public regulatory scheme. Where a statutory cause of action involves a matter of public right, § 1514A confers no right to a jury trial under the third prong of the Seventh Amendment analysis. *Granfinanciera*, 492 U.S. at 42 n.4 ("If a claim that is legal in nature asserts a 'public right,' as we define that term in Part IV, then the Seventh Amendment does not entitle the parties to a jury trial if Congress assigns its adjudication to an administrative agency or specialized court of equity.").[11]

### III. ORDER

For the reasons set forth above, the court GRANTS defendants' motion to strike plaintiffs' demand for jury trial with respect to their Sarbanes-Oxley Act, 18 U.S.C. § 1514A, claim without

---

[9] 18 U.S.C. §§ 1341, 1343, and 1344 are part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and relate to fines and penalties for use of mails to defraud and defrauding financial institutions. Section 1348 is the securities fraud provision of the Sarbanes-Oxley Act providing for enhanced fines and penalties.

[10] Section 1514A falls within Title VIII of Sarbanes-Oxley, which is designated as the Corporate and Criminal Fraud Accountability Act of 2002.

[11] Plaintiffs also argue that defendants are equitably estopped from bringing the present motion by virtue of defendants' own demand for a jury trial on their counterclaims involving overlapping and similar facts and issues. The court does not find that the principles of equitable estoppel apply here.

1  prejudice to plaintiffs' renewing a demand for jury trial if later legal authority supports such a
2  demand.

4  DATED:     3/27/2008

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Joseph Heathcliff Ainley | joeainley@gmail.com |
| Philip Edward Kay | phil@nosexualharassment.com |
| John Franklin McIntyre , Jr. | jmcintyre@popelka.com |

**Counsel for Defendants:**

| | |
|---|---|
| Adi Herzberg | aherzberg@gibsondunn.com |
| Rebecca Justice Lazarus | rjustice@gibsondunn.com |
| Erin E. Schneider | eschneider@gibsondunn.com |
| Austin Van Schwing | aschwing@gibsondunn.com |
| Jeffrey Alan Leon | jleon@leonandleon.com |

**Counsel for Miscellaneous:**

| | |
|---|---|
| Sheila Marie Pierce | sheila.pierce@bingham.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   3/28/2008               TSF
                                              **Chambers of Judge Whyte**